### RICHMOND IRON WORKS *vs.* SAMUEL WOODRUFF.

Under a plea of nul disseisin and payment to a writ of entry to foreclose a mortgage, the defendant cannot deny his possession.

A judge's refusal to allow a defendant, who has pleaded nul disseisin and payment to a writ of entry to foreclose a mortgage, to amend at the trial by filing a disclaimer, is no ground of exception.

An agreement for the sale of all the wood standing on certain land, to be delivered on the purchaser's land and there measured, and to be paid for according to such measurement, vests the title in the wood in the purchaser upon the delivery on his land.

In a suit to foreclose a mortgage, which the defendant alleged had been paid, the plaintiff proved an agreement to change the appropriation of the payments, previously agreed to be applied on the mortgage debt, to another debt. *Held*, that the defendant might then prove that the agreement to change the appropriation was made after he had applied for the benefit of the insolvent laws, and therefore invalid.

WRIT OF ENTRY, dated April 20th 1854, to foreclose a mortgage, made to secure the payment of a promissory note, dated August 26th 1847, for $432 and interest. Plea, nul disseisin, and payment. The case was referred to an auditor, who made the following report thereof:

The plaintiff introduced the note, which bore no indorsement upon it, and the execution of which was admitted.

The defendant then introduced an offer in writing, dated August 26th 1847, made by him to Samuel Gates, as the plaintiffs' agent, and by him accepted, to sell him all the wood and timber standing on certain land in West Stockbridge, " estimated at four hundred cords, more or less," and to deliver the whole of it on the plaintiffs' furnace bank in Richmond, within one year; " the wood to be cut and ranked up on the said bank as common cord wood four feet in length and measured there; " charging a certain sum " for each solid cord so delivered; on the receipt of each hundred cords, measurement is to be determined or verified, and payment to be made by indorsement of the amount on " the mortgage note, " or to cancel in part " the mortgage; with a stipulation that, if the defendant should fail to deliver the wood within the specified time, the plaintiffs should have the right to enter upon the premises and take the wood, and deduct the expenses from the price stipulated.

Gates testified that some time before the defendant's land was sold by his assignee in insolvency — but whether before or after the defendant went into insolvency, he could not say — the defendant requested him to credit the wood drawn by him on book account instead of on the mortgage; and it was so credited. The defendant filed his petition for the benefit of the insolvent land on the 2d of August 1851, and duly obtained a certificate of discharge.

The defendant proved by the plaintiffs' books credits of more than three hundred cords of wood in April 1849, at prices corresponding to those stipulated, and amounting in all to $757.95; and the auditor, upon all the evidence introduced, was of opinion that the plaintiff rightfully appropriated the credits to the defendant on account of the wood, in payment of the plaintiffs' book account; and found the amount due to the plaintiffs to be $654.94.

A trial was had in the court of common pleas at February term 1857, before *Aiken*, J., who signed this bill of exceptions:

" The plaintiff offered evidence tending to prove the execution of the mortgage and of the note mentioned in the condition thereof; and the report of the auditor.

" The defendant then offered to show that, at the time the action was brought, he was not in possession of the premises and had no interest therein ; but the judge ruled that, under the pleadings, the evidence was not admissible.

" The defendant then moved for leave to file an amended plea disclaiming all right, title and interest in the premises ; but the judge overruled the motion.

" The defendant then read in evidence the writing referred to in the auditor's report, and contended that, as soon as the defendant delivered wood mentioned in said writing, upon the plaintiffs' furnace bank, sufficient to pay said note, it was a payment thereof and discharged the mortgage.

" The defendant called Cyrus H. Woodruff as a witness, and asked him the times of delivery of the wood, for the purpose of showing that the agreement referred to by Gates was after insolvent proceedings had been instituted. The plaintiff objected, and the objection was sustained.

" The jury were instructed that, by the agreement, the delivery of each load of wood would not operate as a payment as the same was delivered, without some further act ; that if there was a performance of the acts specified in said writing, so that nothing remained to be done but to indorse the wood on the note, such performance, although no indorsement actually was made, would operate as payment of the note, and the plaintiff could not recover ; but that the parties had the power and the right, at any time before the wood so operated as payment, to change their agreement and apply it in payment of the account ; and that if they did make a different arrangement, and agreed that said wood should be applied on the plaintiffs' account against the defendant, and it was applied accordingly, a verdict should be rendered for the plaintiffs.

" The jury returned a verdict for the plaintiffs ; and to the foregoing rulings the defendant excepts."

*J. E. Field,* for the defendant.  1. The evidence offered by the defendant should have been received under the general issues pleaded.  *St.* 1836, *c.* 273, § 1.  *Churchill* v. *Loring,* 19 Pick. 466.

38 *

2. If the defendant had mistaken his plea, the amendment should have been allowed. *St.* 1852, *c.* 312, § 32.

3. The testimony offered, tending to show that at the time of the alleged change of appropriation the defendant was in insolvency, should have been received.

*H. L. Dawes,* (*I. Sumner* with him,) for the plaintiffs. 1. The plea of nul disseisin admits, upon the record, that the defendant is tenant of the freehold, and estops him to prove the contrary. *Kelleran* v. *Brown,* 4 Mass. 443. *Pray* v. *Peirce,* 7 Mass. 384. *Higbee* v. *Rice,* 5 Mass. 344. *Stevens* v. *Winship,* 1 Pick. 317.

2. The amendment offered was entirely within the discretion of the court. Rev. Sts. *c.* 100, § 22. *St.* 1852, *c.* 312, § 32. *Haynes* v. *Morgan,* 3- Mass. 208. *Thatcher* v. *Miller,* 13 Mass. 270. And therefore not matter of exception. *Reynard* v. *Brecknell,* 4 Pick. 302.

3. The instructions to the jury in reference to the contract were sufficiently favorable to the defendant. Until the contract was entirely fulfilled on the part of the defendant, he cannot claim the benefit of its fulfilment. The title to the wood had not passed to the plaintiffs. Chit. Con. (8th Amer. ed.) 376, 377. *Ward* v. *Shaw,* 7 Wend. 404. *Crawford* v. *Smith,* 7 Dana, 61. Until the contract was performed, the parties might rescind or modify it as they pleased. *Johnson* v. *Reed,* 9 Mass. 84.

4. The testimony of Cyrus H. Woodruff was immaterial. If the defendant made with the plaintiffs the agreement that the wood should be appropriated in payment of the account, he is bound by that agreement. He cannot set up that he has done this in fraud of his own creditors. No one but his assignee could call the transaction in question. If it occurred after the commencement of the insolvent proceedings, it is possible the assignee might deprive the plaintiffs of the benefit of the wood. But inasmuch as the defendant could not himself do this thing, it became as to him an immaterial question, whether it was before or after proceedings in insolvency were commenced; and the testimony was rightly rejected. *Drinkwater* v. *Drinkwater,* 4 Mass. 354. *Clapp* v. *Tirrell,* 20 Pick. 247.

Richmond Iron Works *v.* Woodruff.

THOMAS, J. 1. The evidence offered to show that when the action was brought the tenant was not in possession was rightly excluded. Under the pleadings the question was not open. The tenant's plea of nul disseisin admitted that he was tenant of the freehold, and there was no specification to qualify the effect of this plea.

2. The question of amendment was addressed to the discretion of the court, and is not the subject of exception. And, more than that, we think the discretion was properly used.

3. The evidence to show that the agreement to have the wood appropriated to the payment of the book account was made after proceedings in insolvency were instituted should have been received. Under the contract the wood had been delivered. It became the property of the plaintiffs upon such delivery. Nothing remained to be done but the measurement and computation to ascertain the amount of payment. Indeed, it would appear from the books that even the amount had been ascertained. It was not a contract for the sale of a part of an entire lot, and requiring severance and measurement before the title of the vendee could be perfected.

This contract or agreement for the appropriation of the price of the wood to the payment of the mortgage the parties might indeed modify or wholly rescind. The plaintiffs attempted to show such change of the contract by the testimony of Gates.

The evidence of Gates left it uncertain whether the agreement for a change in the appropriation of the price of the wood was before or after the defendant's insolvency. It fixed no time for the agreement, though it left it probable that the time was subsequent to the insolvency. The defendant offered to show the true time. No judgment could be formed of the validity of such an agreement for a change of the written contract, until it was ascertained whether the agreement was made before the institution of proceedings in insolvency. After the defendant had been declared insolvent, he could not change the appropriation. His right in and power over the mortgage or the proceeds of the sale of the wood were gone. *Exceptions sustained.*